# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| UNITED STATES OF AMERICA | CRIMINAL ACTION |
|---|---|
| VERSUS | NO: 13-189 |
| MELVIN JACKSON | SECTION: "S" (1) |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that Melvin Jackson's Motion brought under **28 U.S.C. § 2255 to Vacate, Set Aside, or Correct his Sentence** (Rec. Doc. 136) is **DENIED**.

## BACKGROUND

The underlying facts of this matter, as set forth by the United States Court of Appeals for the Fifth Circuit, are as follows:

> [Defendant] Jackson's indictment and ultimate conviction arose from two separate incidents. The first was an alleged shooting that occurred in May of 2012 outside of Roy's Lounge, a dice hall. According to the Government, a dispute began between Jackson and an unidentified victim over dice game winnings. After leaving the dice hall, Jackson evidently pulled a gun from his waistband and handed it to Marvin Dokes ("Dokes"). Dokes then reportedly shot the victim four times in the torso, and Jackson robbed the victim as he lay on the ground. The victim received treatment at a hospital but was uncooperative when questioned. Police have not located the victim since he left the hospital — it is now believed that he used an assumed identity. Video surveillance captured this incident, although the shooting took place off screen. Jackson, a prior felon, was arrested and charged with attempted murder in Louisiana, but he was released on bail in August of 2012. As a result of this event, a federal grand jury indicted Jackson on the charge of felon in possession of a firearm (Count 2).
>
> The second incident involved a Drug Enforcement Agency

> ("DEA") task force sting that targeted Jackson in August of 2013.
> After a confidential informant purchased heroin from Jackson,
> DEA agents raided his trailer and recovered approximately
> twenty-seven grams of heroin. Once arrested, Jackson, without
> counsel present, spoke extensively with officers about his
> distribution of heroin. This operation led to Jackson's indictments
> for conspiracy to distribute more than one kilogram of heroin
> (Count 1) and possession with intent to distribute heroin (Count 3).
> The timeline provided by the Government indicates that the
> conspiracy started sometime prior to January of 2012 and
> continued through August of 2013, when Jackson was arrested.

United States v. Jackson, 662 Fed. App'x. 310 (5th Cir. 2016). In speaking with drug agents in August 2013 (more than one year after the May 2012 shooting) Jackson confessed on audiotape that he was not the shooter outside the Lounge, but that he handed a gun to someone else to shoot the victim.

On August 29, 2013, the Grand Jury in the United States District Court for the Eastern District of Louisiana returned a three-count Indictment against Jackson charging him with conspiracy to distribute greater than one kilogram of heroin (Count 1), in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A)(2); felon in possession of a firearm (Count 2), in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2); and possession with intent to distribute heroin (Count 3), in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C). On April 28, 2015, a jury found him guilty on all three counts.

The following evidence relevant to the instant motion was adduced at trial. On direct examination by the government, Detective Stephen Jenkins, lead investigator for the shooting, testified that the video footage showed Jackson exiting the Lounge and setting a beer bottle on

2

the steps; the shooting victim exiting the Lounge, walking behind Jackson; Jackson handing a gun to Marvin Dokes; several shots being fired and the victim falling to the ground; and Jackson digging through the shooting victim's pockets, stealing about $1,000 from the victim, and walking away. The Fifth Circuit concluded that Jackson's "possession of the firearm occurred almost contemporaneously with the shooting and [Jackson's subsequent] robbery" of the victim; and "the item Jackson handed Dokes was in fact a firearm." Jackson, 662 Fed. App'x. at 317-18.

On November 11, 2015, the court sentenced Jackson to 360 months incarceration as to Count 1, 120 months incarceration as to Count 2, and 240 months incarceration as to Count 3, all to be served concurrently. Jackson's term of imprisonment was to be followed by a 5-year term of supervised release as to Count 1, and a 3-year term of supervised release as to Counts 2 and 3. Jackson appealed his conviction and sentence to the United States Court of Appeals for the Fifth Circuit. On December 8, 2016, the appellate court denied the majority of Jackson's claims, but remanded the case for re-sentencing on one issue pertaining to a sentencing enhancement. On March 16, 2017, this court re-considered the sentencing enhancement and re-imposed the original sentence. Defendant appealed the sentence to the Fifth Circuit, which affirmed the sentence. The Supreme Court denied certiorari on May 19, 2018.

On May 11, 2018, Jackson filed a motion for a new trial as to Count 1 arguing that he had discovered evidence that a government witness lied at his trial. The court denied that motion as untimely on June 21, 2018.

On February 25, 2019, defendant filed the instant petition under 28 U.S.C. § 2255 to

Vacate, Set Aside, or Correct his Sentence, based on two grounds of ineffective assistance of counsel.

## APPLICABLE LAW

Pursuant to § 2255, a prisoner in custody under a federal court sentence may seek relief on four grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction to impose such sentence"; (3) "that the sentence was in excess of the maximum authorized by law"; or, (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255. If the district court determines that a petitioner is entitled to relief under § 2255, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." Id. at § 2255(b).

Relief under § 2255 "is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Segler, 37 F.3d 1131, 1133 (5th Cir. 1994) (quoting United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam)). Accordingly, "[a] defendant ... may not raise an issue for the first time on collateral review without showing both 'cause' for his procedural default, and 'actual prejudice' resulting from the error." United States v. Shaid, 937 F.2d 228, 232 (5th Cir. 1991). "[A]bsent unusual circumstances, ineffective assistance of counsel, if shown, is sufficient to establish the cause and prejudice necessary to overcome a procedural default." United States v. Walker, 68 F.3d 931,

4

934 (5th Cir. 1995).

To succeed on a claim of ineffective assistance counsel, petitioner must show: (1) that his counsel's performance was deficient; and (2) that his counsel's deficient performance prejudiced his defense. Strickland v. Washington, 104 S. Ct. 2052, 2064 (1984). A claim of ineffective assistance of counsel is defeated if the petitioner fails to establish either deficient performance or resulting prejudice. United States v. Chavez, 193 F.3d 375, 378 (5th Cir. 2000).

Deficient performance by counsel is established by showing "that counsel's representation fell below an objective standard of reasonableness." Strickland, 104 S. Ct. at 2064. In applying this standard, the "court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." Bell v. Cone, 122 S. Ct. 1843, 1854 (2002) (quoting Strickland, 104 S. Ct. at 2052). The "objective standard of reasonableness" requires "that counsel research relevant facts and law, or make an informed decision that certain avenues will not be fruitful." United States v. Conley, 349 F.3d 837, 841 (5th Cir. 2003) (quotations omitted). However, "[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." United States v. Jones, 287 F.3d 325, 331 (5th Cir. 2002) (quotations omitted). Thus, "[i]nformed strategic decisions of counsel are given a heavy measure of deference and should not be second guessed." Id. (quotations omitted).

To demonstrate prejudice caused by counsel's allegedly deficient performance, the petitioner must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 104 S. Ct. at 2068. Petitioner must show that counsel's errors were serious enough to deprive him of a fair trial, of which the result would have been reliable. Id. at 2064.

## ANALYSIS

**I.  Alleged ineffective assistance of counsel related to defense counsel's cross-examination of prosecution witness.**

Jackson argues that his trial counsel was constitutionally ineffective when cross-examining prosecution witness Stephen Jenkins by eliciting damaging hearsay testimony, to which defense counsel failed to object, and which Jackson contends undermined his mistaken identity defense to Count 2.

Count 2 charged Jackson with being a felon in possession of a firearm. Because the actual Roy's Lounge shooting took place off camera, and Jackson's back was to the camera when he handed the gun off to the shooter, Jackson maintained that the charge was based on mistaken identity, and that he was not in possession of the firearm.

At trial, on direct examination, Detective Jenkins testified that he had collected the beer bottle Jackson had placed on the steps, as well as four spent shell casings and one live round found lying close to the victim's feet. On cross-examination of the detective, defense counsel elicited that the recovered beer bottle had been subjected to forensics testing by the State Police

Crime Lab, which detected Jackson's DNA on the bottle. Jackson argues that by eliciting this otherwise inadmissible testimony (the forensics analyst was not listed as a witness, nor the testing results as an exhibit), his attorney was constitutionally deficient. He further contends that because the victim failed to identify him in a photo lineup, in the absence of the damaging testimony regarding the DNA match, the jury would have accepted his mistaken identity defense.

The court pretermits the question of whether Jackson's counsel was deficient under Strickland, because Jackson cannot establish prejudice. Even in the absence of the DNA evidence, Jackson had no viable mistaken identity defense. As the Fifth Circuit Court of Appeals has already concluded, "[t]he video was highly probative. It clarified identity, which was at issue in this case." Jackson, 662 Fed. App'x. at 317. Thus, the Lounge video footage, as well as Jackson's subsequent audio-taped confession, conclusively established that Jackson handed the shooting weapon to Dokes moments before the victim was shot. Accordingly, it was proved that Jackson possessed a firearm and ammunition as charged in Count 2, undermining his contention in the instant § 2255 petition that but for the DNA evidence, he would not have been convicted. Jackson has thus failed to demonstrate the requisite Strickland prejudice and is not entitled to relief on this ground.

**II.      Ineffective Assistance of Counsel related to failure to object to application of United States Sentencing Guidelines ("USSG").**

With respect to his sentence for Count 2, Jackson contends that his defense counsel was constitutionally ineffective for failing to object to the sentencing court's application of the USSG

§ 2K2.1(c)(1) cross-reference to the attempted-murder Guideline, § 2A2.1. Section 2A2.1 provides in part:

> Assault with Intent to Commit Murder; Attempted Murder
>
> (a) Base Offense Level:
>
> (1) 33, if the object of the offense would have constituted first degree murder; or
>
> (2) 27 otherwise. . . .

The application notes provide that "'First degree murder' means conduct that, if committed within the special maritime and territorial jurisdiction of the united States, would constitute first degree murder under 18 U.S.C. § 1111." Title 18 U.S.C. § 1111(a) further provides that: "Murder is the unlawful killing of a human being with malice aforethought. Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing . . . is murder in the first degree. Any other murder is murder in the second degree."

Jackson contends that defense counsel rendered ineffective assistance of counsel by failing to object to the offense level of 33 because there was no evidence presented at trial for a rational jury to find that defendant attempted to kill the victim with malice aforethought. In other words, Jackson argues that the record reflects that he lacked the required *mens rea* for an offense level of 33, and his counsel should have, but did not object on that basis.

Initially, the court notes that defense counsel did make a *mens rea* objection to the PSR which it supplemented at the sentencing, arguing that the attempted-murder Guideline did not

apply because Jackson handed the gun to another person, who shot the weapon, but that Jackson himself did not use the weapon and took no further action with the firearm. Jackson thus argued that the government failed to show by a preponderance of the evidence that Jackson, himself, had the requisite intent that the weapon be used or knew that the weapon would be used to commit an attempted murder. That objection was overruled based on the evidence adduced at trial and Fifth Circuit authority. Thus, Jackson's § 2255 claim that his attorney performed deficiently by failing to so object on *mens rea* grounds to the application of the attempted-murder Guideline is belied by the record.

With respect to the present argument, that his counsel was constitutionally ineffective by failing to specifically rest the *mens rea* objection on the basis that there was insufficient evidence that Jackson attempted to kill the victim "with malice aforethought and premeditation," the court finds that Jackson suffered no prejudice because such an objection would have been denied as meritless.

The Fifth Circuit has previously considered whether application of the assault-with-intent-to-commit murder Guideline under USSG § 2A2.1(a)(1), cross-referenced via USSG § 2K2.1(c)(1)(A), required evidence of the defendant's "intent to kill." United States v. Villanueva, 541 Fed. App'x. 486, 487 (5th Cir. 2013). Acknowledging that the USSG incorporate a malice aforethought requirement to reach a base offense level of 33, the court went on to find that "malice aforethought does not require a subjective intent to kill, but may be established by evidence of conduct which is a reckless and wanton and a gross deviation from a

9

reasonable standard of care." Id. (citing cases).

In the present case, immediately following a heated exchange with the victim, Jackson handed a loaded firearm to shooter Dokes, who then shot the victim, upon which Jackson robbed the wounded victim and walked away. These facts establish Jackson's "extreme recklessness and wanton disregard for human life." See Villaneuva, 541 Fed. App'x. at 487 (citation omitted). Moreover, on direct appeal in the instant case, the Fifth Circuit concluded that: (1) attempted first-degree murder under § 1111(a) includes an attempted killing "committed in the perpetration of . . . robbery"; and (2) Jackson's robbery of the victim, which was "almost contemporaneous with the shooting[,]" "shows he [Jackson] had 'knowledge or intent' that the gun would be used" in connection with the victim's attempted murder, as applied under § 2K2.1(c)(1). Jackson, 662 Fed. App'x. at 317-18 & n.9.

Accordingly, even if Jackson's lawyer had expanded his *mens rea* objection to specifically encompass "malice aforethought" for application of the challenged Guideline, it would not have succeeded at sentencing or on direct appeal. Defense counsel's failure to make a meritless objection did not prejudice Jackson and thus does not constitute deficient representation. Therefore,

**IT IS HEREBY ORDERED** that Melvin Jackson's Motion brought under **28 U.S.C. § 2255 to Vacate, Set Aside, or Correct his Sentence** (Rec. Doc. 136) is **DENIED**.

New Orleans, Louisiana, this __2nd__ day of May, 2019.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**